Canon **HARPER** and Adrian Porch,
Appellants–Defendants,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A01–0908–CR–417.

Court of Appeals of Indiana.

March 1, 2010.

Jennifer H. Culotta, Culotta & Culotta, LLP, Evan M. Ray, Niles D. Driskell, Jeffersonville, IN, Attorneys for Appellants.

Gregory F. Zoeller, Attorney General of Indiana, Angela N. Sanchez, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Defendants, Canon Harper (Harper) and Adrian Porch (Porch), bring this joint interlocutory appeal following the trial court's denial of their motion to suppress evidence seized during a traffic stop. We affirm.

*ISSUES*

Porch and Harper present two issues on appeal, which we restate as follows:

(1) Whether the trial court erred when it denied their motion to suppress evidence; and

(2) Whether the trial court erred when it failed to apply the Seatbelt Enforcement Act to the present case.

*FACTS AND PROCEDURAL HISTORY*

On November 10, 2008, Clark County Sheriff's Department Officers Bradley Jones (Officer Jones) and Donovan Harrod (Officer Harrod) were on patrol together near the Bel–Air Motel, an area known for "a lot of drug activity." (Suppression Hearing p. 9). Officer Jones noticed that the license plate was not illuminated on the car Harper was driving. Officer Jones intended to pull the car over and make a traffic stop; however, Harper and his passenger, Porch, had already pulled into the Bel–Air Motel parking lot and they had exited the car prior to Officer Jones' initiation of the stop. Officer Jones did not activate his lights and instead pulled up behind Harper's car.

As Officer Jones got out of the car, he observed Harper standing next to the driver's side of his car and Porch walking towards the Motel with a duffle bag in his hand while he was "trying to get to the door." (Suppression Hearing p. 10). At

that point, Porch was knocking on one of the room doors and a female opened the door. Officer Jones asked Porch to stop "[c]ause he was carrying a bag and he was going to the door and I didn't know who was in the hotel room or what he was doing." (Suppression Hearing p. 11). Additionally, Officer Jones stated that he wanted to "freeze the scene" because he considered this a "traffic stop and ... [his] goal [was] to keep people in [his] sight and know what they're doing." (Suppression Hearing pp. 11–12). As a result, he asked Porch to come back to Harper's car and subsequently took the duffle bag and set it on the hood of Harper's car.

Harper asked why he had been stopped, and Officer Jones informed him that his license plate light was out. After starting the car and confirming that the light was in fact out, Officer Jones went back to Porch and asked for permission to perform a pat down search to which Porch consented. Officer Jones then asked both Porch and Harper if the duffle bag belonged to either of them. Porch responded that it was not his bag, and Harper responded that it was an ex-girlfriend's and that had she left it in the car. Officer Jones asked both men if they had a problem with him searching the bag. Neither of them objected. Inside the bag, Officer Jones discovered cocaine and drug paraphernalia. He then placed Porch into handcuffs and asked Officer Harrod to handcuff Harper. Officer Harrod placed one handcuff on Harper, however, Harper began to struggle and broke free from Officer Harrod, and a foot chase ensued and Harper was later apprehended.

On November 18, 2008, the State filed an Information against Harper, under cause number 10D02–0811–FA–378, charging him with: Count I, dealing in cocaine, a Class A felony, Ind.Code § 35–48–4–1; Count II, possession of cocaine, a Class A felony, I.C. § 35–48–4–6; Count III, maintaining a common nuisance, a Class D felony, I.C. § 35–48–4–13; Counts IV and V, resisting law enforcement, Class A misdemeanors, I.C. § 35–44–3–3; Count VI, battery to a police officer, a Class A misdemeanor, I.C. § 35–42–2–1; and Count VII, possession of paraphernalia, a Class A misdemeanor, I.C. § 35–48–4–8.3. On that same day, the State filed an Information against Porch, under cause number 10D02–0811–FA–379, charging him with: Count I, dealing in cocaine, a Class A felony, I.C. § 35–48–4–1; Count II, possession of cocaine, a Class A felony, I.C. § 35–48–4–6; Count III, visiting a common nuisance, a Class B misdemeanor, I.C. § 35–48–4–13; and Count IV, possession of paraphernalia, a Class A misdemeanor, I.C. § 35–48–4–8.3. On January 8, 2008, Porch filed a motion to suppress evidence. On March 27, 2009, Harper filed a motion to suppress evidence. A consolidated suppression hearing was held on May 6, 2009. The trial court denied their motions to suppress. After certification by the trial court, on September 8, 2009, this Court granted Harper and Porch's respective Motions to Accept Jurisdiction Over Interlocutory Appeal.

Porch and Harper now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

We review the denial of a motion to suppress in a manner similar to other sufficiency matters. In conducting our review, we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Rice v. State*, 916 N.E.2d 296, 300 (Ind.Ct.App. 2009). However, unlike the typical sufficiency of the evidence cases where only the evidence favorable to the judgment is considered, we must consider the uncon-

tested evidence favorable to the defendant. *Bentley v. State,* 779 N.E.2d 70, 73 (Ind.Ct. App.2002). "Although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse of discretion standard, the ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed *de novo." Crabtree v. State,* 762 N.E.2d 241, 244 (Ind.Ct. App.2002).

## II. *Constitutional Violations*

Porch and Harper contend that the evidence found in the duffle bag should have been suppressed pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

### A. *Fourth Amendment*

■ Specifically, Porch and Harper argue that the State failed to "justify the seizure because [Officer Jones] never established a particularized belief that Mr. Harper or Mr. Porch [were] armed and presently dangerous." (Appellant's Br. p. 11).

■ "The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures." *Howard v. State,* 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). The United State's Fourth Amendment protection against unreasonable searches and seizures has been extended to the States through the Fourteenth Amendment. *Thayer v. State,* 904 N.E.2d 706, 709 (Ind.Ct.App.2009). The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to the brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, under *Ter-*

*ry,* an officer is permitted to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Armfield v. State,* 918 N.E.2d 316, 319 (Ind. 2009) (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Such reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. *D.K. v. State,* 736 N.E.2d 758, 761 (Ind.Ct.App.2000).

■ This court has recognized that stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is quite brief. *Thayer,* 904 N.E.2d at 709. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). An ordinary traffic stop is akin to an investigative detention, and the principles announced in *Terry* apply. *D.K. v. State,* 736 N.E.2d 758, 761 (Ind.Ct.App.2000). However, "[t]he *Terry* investigative detention should 'last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Even if a stop is justified, reasonable suspicion only allows the officer to temporarily freeze the situation for inquiry and does not give him all the rights attendant to an arrest. *State v. Campbell,* 905 N.E.2d 51, 54 (Ind.Ct.App. 2009). "Therefore, once the purpose of the initial stop has been completed, an officer cannot 'further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" *D.K.,* 736 N.E.2d at 761 (quoting *United States v. Mesa,* 62 F.3d 159, 162 (6th Cir.1995)).

Thus, our analysis turns on whether the officer's conduct after the initial purpose of the traffic stop had been satisfied was in violation of the Fourth Amendment.

Here, in support of their argument that the officers' investigative stop exceeded the boundaries imposed by *Terry*, Porch and Harper direct us to two factually similar cases where passengers walked away from legally stopped vehicles. In *Walls v. State*, 714 N.E.2d 1266–67 (Ind.Ct.App. 1999), *reh'g denied, trans. denied.*, after the car had been pulled over, Walls, a passenger in the car, began to walk away and the police officer ordered him to come back. Walls complied. *Id.* A pat down search of Walls revealed two knives, one of which had cocaine residue. *Id.* This court held that when a passenger of a car that has been lawfully stopped exits the car and walks away, a police officer may not as a matter of routine practice order the passenger to return to the car absent a showing that the defendant was engaged or about to be engaged in criminal activity. *Id.* at 1268. However, in *Tawdul v. State*, 720 N.E.2d 1211, 1217 (Ind.Ct.App.1999), *reh'g denied, trans. denied.*, another case involving the passenger of a validly stopped car leaving the scene of the traffic stop, this court held that "police have a limited right to *briefly detain* a passenger who exits the vehicle after it has been lawfully stopped," and that "[t]he police may detain the passenger in order to ascertain the situation and to alleviate any concerns the officer has for his or her safety." *Id.* (Emphasis added). In reaching its conclusion, this court relied upon the trend of decisions in other jurisdictions holding that because the "public interest in officer safety outweighs the potential intrusion to the passenger's liberty interests," it is not unreasonable for the police to order a passenger to return to the vehicle. *See id.* at 1216–17 (quoting *People v. Gonzalez*, 184 Ill.2d 402, 235 Ill.Dec.

26, 704 N.E.2d 375 (1998), *cert. denied* ); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *and Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Additionally, this court found that "simply because the driver may have been independently culpable for the traffic offenses, [it] does not entitle the passenger to simply exit the vehicle and walk away." *Id.* at 1217.

In this case, applying *Tawdul*, we find that it was not unreasonable for Officer Jones to briefly detain Porch after he legally stopped Harper's vehicle until he made an initial assessment of the situation. Officer Jones testified that after he pulled up behind Harper and Porch, they were both already outside of the car. Harper stood next to the driver's side and Porch started walking toward the motel as if he "was trying to get to the door." (Suppression Hearing p. 10). Officer Jones made contact with Porch "[c]ause he was carrying a bag and he was going to the door and I didn't know who was in the hotel room or what he was doing." (Suppression Hearing p. 11). Officer Jones then asked him to come back to the scene and Porch complied with Officer Jones' requests. Officer Jones took the duffle bag and placed it on the hood of the car and then explained to Harper and Porch that the license plate light was out. Accordingly, Porch's brief detention was justified as it was not unreasonably long or intrusive.

■ Porch and Harper argue that after the traffic stop had been completed and they had confirmed that the license plate light was out, the subsequent pat down search and search of the duffle bag was unreasonable. Nevertheless, because Porch consented to the search of his person and to the search of the duffle bag, insofar as they complain that the search

was unreasonable, they cannot prevail, as it is well established that consent is a valid exception to the requirements of the Fourth Amendment. *Thayer,* 904 N.E.2d at 710; *see also United States v. Maldonado,* 38 F.3d 936, 940 (7th Cir.1994) (a suspect's failure to object can indicate consent).

## B. *Article 1, Section 11*

We reach a similar result when analyzing Porch and Harper's claim under the Indiana Constitution. Parallel to the language of the Fourth Amendment, Article 1, Section 11 provides, "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...."

A police stop and a brief detention of a motorist is reasonable and permitted under Article 1, Section 11 of the Indiana Constitution if the officer reasonable suspects that the motorist is engaged in, or about to engage in, illegal activity. *State v. Quirk,* 842 N.E.2d 334, 340 (Ind.2006). Section 11 permits a police officer, during an investigatory stop, to detain a motorist briefly only as necessary to complete the officer's work related to the illegality for which the motorist was stopped. *Id.* Where an officer stops a vehicle for a traffic violation, a request for the driver's license and vehicle registration, a license plate check, a request to search the driver's vehicle and an inquiry regarding whether the driver has a weapon in the vehicle are within the scope of reasonable detention. *Id.* When police conduct is challenged as violating this section, the burden is on the State to show that the search was reasonable under the totality of the circumstances. *State v. Washington,* 898 N.E.2d 1200, 1206 (Ind. 2008). The determination of the reasonableness of a search and seizure under the

Indiana Constitution turns on "a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of search and seizure impose on the citizen's ordinary activities; and (3) the extent of law enforcement needs." *Id.* (citing *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind. 2005)).

Here, upon review of the totality of the circumstances, the State has failed to demonstrate that the pat down and search of the duffle bag was reasonable under the circumstances. After Officer Jones showed Harper that the light was out, nothing in the record indicates that Harper and Porch were anything but cooperative with the officers. In fact, the State's brief characterizes Harper and Porch's behavior as the following: "The defendant[']s continued to cooperate with the officers as they confirmed that the license plate was not properly illuminated." (State's Br. p. 12). Thus, under the totality of the circumstances, we cannot say that the search was justified.

Nevertheless, as the State aptly points out, Officer Jones testified that Porch verbally assented to the search of his person and the duffle bag. One exception to the search warrant requirement occurs when consent is given to the search, under the theory that "when an individual gives permission to a search of either his person or property, governmental intrusion thereon is presumably not unreasonable." *Smith v. State,* 713 N.E.2d 338, 342 (Ind.Ct.App.1999), *trans. denied.* (citing *Jones v. State,* 655 N.E.2d 49, 54 (Ind. 1995).

Here, Officer Jones testified that after he showed Harper and Porch that the light was out, he "went back and talked to Mr. Porch again and asked for his permission to search his person," to which Porch consented. (Suppression Hearing p. 13). Af-

ter searching Porch, Officer Jones then asked both men if the duffle bag belonged to either of them. He testified:

> After I searched Mr. Porch I asked him if the bag was his, he said it was not his. I asked Mr. Harper if the bag was his, he said an ex-girlfriend had left it in the car. I asked them both if they had any objection to me searching the bag and both of them said they didn't.

(Suppression Hearing p. 14). As a result of their consent, the search was not unreasonable. *Smith*, 713 N.E.2d at 342.

### III. *Illuminated License Plate*

■ Porch and Harper argue that the trial court erred in failing to recognize that I.C. § 9–19–6–4(e) governing license plate illumination should be treated similarly to the occupants of a vehicle stopped for violation of the Seatbelt Enforcement Act, I.C. § 9–19–10–3.1, as "[t]hese traffic violations are analogous because neither violation directly places other drivers in danger [ ]" and furthermore, neither of "these traffic violations implicate concerns regarding potential criminal activity beyond the mere violation." (Appellant's Br. pp. 20–21).

The Seatbelt Enforcement Act states that "a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." I.C. § 9–19–10–3.1. Indiana Code section 9–19–6–4(e), which requires the illumination of license plates, does not include the same language as the Seatbelt Enforcement Act limiting the scope of the stop if violated.

We decline to extend the language of I.C. § 9–19–10–3.1 to I.C. § 9–19–6–4(e). Recently, our supreme court held that the Seatbelt Enforcement Act should not be construed to "prohibit police from questioning motorists or seeking consent to

search following a terminated traffic stop." *State v. Washington*, 898 N.E.2d 1200, 1207 (Ind.2008). In light of *Washington*, it was not unreasonable for the officers to seek consent from Porch and Harper and the trial court did not err by failing to treat the statutes similarly.

### CONCLUSION

Based on the foregoing, we find that the search did not violate the Fourth Amendment or Art. 1, Section 11 because Porch consented to the search and the trial court did not err by failing to extend the language of I.C. § 9–19–10–3.1 to I.C. § 9–19–6–4(e).

Affirmed.

VAIDIK, J., and CRONE, J., concur.