**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOEL C. WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  67A04-1304-CR-196 |
| | ) | |
| JERRAMY BUSHONG, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No. 67C01-1301-FD-10

**November 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

The State of Indiana appeals the denial of its motion to correct error, which challenged the grant of a motion to suppress evidence gained as a result of a traffic stop and warrantless search of a vehicle driven by Jerramy Bushong ("Bushong"). We affirm.

## Issue

The State presents two issues for review, which we consolidate and restate as a single issue: whether the trial court improperly suppressed evidence.

## Facts and Procedural History

During the evening hours of January 13, 2013, Putnam County Community Corrections Officer Nate O'Hair ("Officer O'Hair") was driving on Veterans Memorial Highway in Greencastle, Indiana, when he passed a white vehicle traveling in the opposite lane of traffic. Officer O'Hair observed the opening and shutting of the back passenger door multiple times. Officer O'Hair had a "kind of a hunch" that a domestic violence situation might be occurring. (Tr. 18.)

Officer O'Hair, who is not authorized to conduct traffic stops, contacted dispatch, turned his vehicle around, and pursued the white vehicle while reporting his observations to dispatch. He was informed by dispatch that a Greencastle Officer was "close to [his] area." (Tr. 7.) Putnam County Sheriff's Deputy Terry Smith ("Deputy Smith") also "was advising he was close." (Tr. 7.)

The white vehicle turned onto Manhattan Road, but encountered high water when approaching a bridge, backed out, and turned onto an alternate road. Greencastle Police

2

Officer Ed Wilson ("Officer Wilson") approached the white vehicle from the opposite direction and initiated a traffic stop. Officer O'Hair did not speak with Officer Wilson prior to the stop and did not instruct Officer Wilson to make the stop.

Officer Wilson learned that Bushong, the driver of the white vehicle, had no valid driver's license. Bushong was removed from the vehicle and placed in handcuffs. About this time, Deputy Smith arrived. Bushong was asked to consent to a vehicle search, but stated that the vehicle was owned by his front-seat passenger, Brittney Thompson ("Thompson"). The officer then asked Thompson for consent to search and she refused, stating that her child was asleep in the vehicle. One of the officers then requested that Officer O'Hair deploy his canine.

Officer O'Hair's canine alerted and a search of the vehicle ensued. Upon opening a padlocked bag, the officers found scales, cotton swabs, baggies, a spoon, a prescription bottle and syringes. Bushong, Thompson, and passenger Kenneth Manning ("Manning") were arrested.

On January 15, 2013, the State charged Bushong with Unlawful Possession of a Syringe, as a Class D felony.[1] On the following day, he was charged with Possession of Paraphernalia, as a Class D felony.[2] On February 6, 2013, Bushong filed a motion to suppress evidence gained as a result of the traffic stop and search, allegedly conducted in violation of the Fourth Amendment of the United States Constitution and Article 1, Section

---

[1] Ind. Code §§ 16-42-19-18, 16-42-19-27(a).

[2] I.C. §§ 35-48-4-8.3(a)(3), 35-48-4-8.3(b).

11 of the Indiana Constitution.

On March 7, 2013, the trial court conducted a hearing on the motion to suppress. At the hearing, the State presented the testimony of Officer O'Hair and Deputy Smith. Officer Wilson, who had initiated the stop, did not testify. Manning testified, without contradiction, he had opened and closed the vehicle door "four or five times" to break off ice and allow the window to roll down so that he could smoke a cigarette with Thompson's child in the vehicle. (Tr. 55.)

On March 12, 2013, the trial court granted Bushong's motion to suppress, concluding that the collective knowledge doctrine – imputing information from one officer to another – is inapplicable:

> Court concludes that the collective knowledge doctrine cannot be applied in this case. The trier of fact does not know why Officer Wilson stopped the vehicle. Obviously, the fact finder [sic] has a hunch of why the stop was made but the State must produce him as an essential witness to say and testify why he stopped the car. He could have been called and said, 'I stopped the car because of what I learned over the radio traffic with O'Hair' which would have invoked the collective knowledge doctrine, that's just not the case here. See State v. Murray, 837 N.E.2d 223 (Ind. App. 2005); Yanez v. State, 963 N.E.2d 530 (Ind. App. 2012).

(App. 40-41.) The State filed a motion to correct error and attached an affidavit from Officer Wilson.[3] Therein, he averred that he had stopped Bushong's vehicle "based solely on O'Hair's reports to dispatch." (App. 43.) The trial court struck the affidavit and denied the motion to correct error. The State appeals.

---

[3] The State also attached a 9-1-1 run sheet, which was ultimately stricken by the trial court.

**Discussion and Decision**

"The State bears the burden of demonstrating the constitutionality of the measures it uses in securing information." State v. Murray, 837 N.E.2d 223, 225 (Ind. Ct. App. 2005), trans. denied. On appeal from the grant of a motion to suppress evidence, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. State v. Washington, 898 N.E.2d 1200, 1203 (Ind. 2008). We will reverse a judgment as contrary to law only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. Murray, 837 N.E.2d at 225. We neither reweigh the evidence nor judge the credibility of witnesses but will consider only the evidence most favorable to the judgment. Id.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 21-22 (1968).

"A traffic stop is a seizure under the Fourth Amendment, [and] police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic

5

law has been violated or that criminal activity is taking place." Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009) (citing Whren v. United States, 517 U.S. 806, 809-10 (1996)). Such reasonable suspicion must be comprised of more than hunches or unparticularized suspicions, that is, an officer must be able to point to specific facts giving rise to a reasonable suspicion of criminal activity. Denton v. State, 805 N.E.2d 852, 855 (Ind. Ct. App. 2004), trans. denied. An objective basis must exist for suspecting legal wrongdoing. See State v. Atkins, 834 N.E.2d 1028, 1032 (Ind. Ct. App. 2005), trans. denied.

The ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed de novo. Harper v. State, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010), trans. denied. This Court considers whether the facts known by the police at the time of the stop were sufficient for a person of reasonable caution to believe that an investigation is appropriate, and the grounds for such a suspicion must be based on the totality of the circumstances. Murray, 837 N.E.2d at 226.

The State argues that reasonable suspicion was satisfied in this case because of the collective knowledge of Officers O'Hair and Wilson. However, for the doctrine to be applicable, the State must have presented evidence that information imputed from one officer to another was actually conveyed before a stop. "In order to rely on collective knowledge, the knowledge sufficient for reasonable suspicion must be conveyed to the investigating officer before the stop is made." Id. at 225 (emphasis added). Here, the trial court in ruling upon the motion to suppress did not know what Officer Wilson had learned before he conducted the stop. Officer Wilson did not testify.

6

The State has asserted that the deficiency was curable by its affidavit on motion to correct error, because Indiana Trial Rule 59(H) contemplates the use of affidavits. However, a party may not "simply offer by affidavit, in connection with his motion to correct errors, evidence which he neglected to present at the prior proceeding." Wagner v. State, 562 N.E.2d 421, 423 (Ind. Ct. App. 1990). Nonetheless, even had the trial court ignored Bushong's right of confrontation and accepted Officer Wilson's affidavit in an attempt to cure the State's deficiency, the State could not prevail. This is so because Officer Wilson averred that he relied upon Officer O'Hair's report to dispatch but Officer O'Hair had reported to dispatch what is at best only a hunch or speculation.[4] On the record before us, there is no specific, articulable fact giving rise to a suspicion of domestic violence and no objective basis to suspect legal wrongdoing.

As evidence was seized in contravention of Bushong's Fourth Amendment rights, the trial court's ruling was not contrary to law. Because we hold that the conduct at issue violated the Fourth Amendment, we need not consider whether the conduct also violated the Indiana Constitution.[5]

---

[4] Officer O'Hair testified that he told dispatch "the reason for being behind the vehicle," which he admitted was "kind of a hunch" of "a domestic going on." (Tr. 5, 18.)

[5] However, we observe that a court cannot assess the reasonableness of a traffic stop involving multiple officers with different roles absent evidence of their shared information. Article I, section 11 provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated. . . ." In determining whether police behavior was reasonable under Section 11, courts must evaluate the police conduct under the totality of the circumstances. Masterson v. State, 843 N.E.2d 1001, 1006 (Ind. Ct. App. 2006), trans. denied.

A panel of this Court, in Yanez v. State, 963 N.E.2d 530 (Ind. Ct. App. 2012), recently addressed the constitutionality of the seizure of marijuana by Officer Humerickhouse after the stop of the individual by Special Agent Rodriguez. The Yanez Court found suppression of the marijuana proper, holding:

Affirmed.

MAY, J., and BRADFORD, J., concur.

---

The State has failed to fulfill its burden under Article I, Section 11 of the Indiana Constitution to establish the reasonableness of its actions in this case. The State failed to present the testimony of Special Agent Rodriquez, the officer who initiated the stop of Yanez. There was no evidence presented as to why Yanez was stopped or what occurred between him and Special Agent Rodriquez when he was stopped. Thus, this Court is unable to assess the reasonableness of the actions of Special Agent Rodriguez in stopping Yanez.

963 N.E.2d at 532-33.